IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

No. 23-4179

————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

DARRYL COLTON FRAZER,

*Appellant.*

————————

Appeal from the United States District Court
for the District of Maryland, at Greenbelt
*The Honorable Deborah L. Boardman, District Judge*

————————

BRIEF OF THE UNITED STATES

————————

Erek L. Barron
United States Attorney

Adam K. Ake
Assistant United States Attorney

6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
(301) 344-4433

September 13, 2023                  *Attorneys for the United States*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

STATEMENT OF JURISDICTION.....................................................1

STATEMENT OF THE ISSUES ..........................................................1

STATEMENT OF THE CASE ..............................................................2

STATEMENT OF THE FACTS ............................................................4

I.      POLICE STOP.............................................................................4

II.     MOTION TO SUPPRESS EVIDENCE ...........................................8

III.    TRIAL AND SENTENCING.......................................................15

SUMMARY OF ARGUMENT ...........................................................18

ARGUMENT ....................................................................................20

I.      THE DISTRICT COURT CORRECTLY DENIED FRAZER'S
        MOTION TO SUPPRESS THE GUN AND DRUG EVI-
        DENCE OFFICERS FOUND IN HIS SATCHEL. ........................20

        A.      Standard of Review ............................................................20

        B.      The District Court Correctly Found That Police
        Acted Properly in Searching Frazer's Bag Before Returning It.. .20

        C.      Alternatively, The District Court's Factual Finding That
        Frazer Threw His Bag Without Submitting To Police Authority
        Independently Supports Affirmance.............................................25

i

II.    THE DISTRICT COURT ALSO CORRECTLY FOUND THAT
       THE OFFICERS HAD REASONABLE SUSPICION TO INI-
       TIATE THEIR STOP OF FRAZER.................................27

       A.    Standard of Review ..............................................27

       B.    The Police Stop in This Case Was Not Improper..............28

III.   THE DISTRICT COURT ACTED WITHIN THE SCOPE OF ITS
       PROPER DISCRETION IN DENYING FRAZER'S REQUEST TO
       DEFINE "REASONABLE DOUBT" FOR THE JURY.................30

       A.    Standard of Review ........................................30

       B.    The District Court Properly Exercised its Discretion in
             Denying the Requested Instruction...............................30

       C.    Even if the District Court Abused Its Discretion, the Error
             was Harmless Because Frazer Was Not Prejudiced...........33

CONCLUSION ........................................................35

STATEMENT WITH RESPECT TO ORAL ARGUMENT.....................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*California v. Hodari D.*, 499 U.S. 621, 629 (1991) ........................... 26, 27

*Hester v. United States*, 265 U.S. 57, 58 (1924) ................................ 26

*L.J. v. Wilbon*, 633 F.3d 297, 310 n.9 (4th Cir. 2011) ............................ 20

*Terry* [*v. Ohio*, 392 U.S. 1 (1968)] .................................... passim

*United States v. Arvizu*, 534 U.S. 266 (2002) ........................................ 29

*United States v. Buster*, 26 F.4th 627, 630 (4th Cir. 2022) ........... passim

*United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015) ... 20

*United States v. Lighty*, 616 F.3d 321, 380 (4th Cir. 2010) ............. 31, 32

*United States v. McLaurin*, 764 F.3d 372, 378-79 (4th Cir. 2014) ......... 30

*United States v. Purpera*, 844 F. App'x 614, 617 (4th Cir. 2021) ........... 30

*United States v. Smith*, 994 F. Supp. 2d 758 (E.D. Va. 2013), *aff'd* 583 F.
    App'x 196 (4th Cir. 2014) ................................................... 13

*United States v. Smith,* 441 F.3d 254, 270 (4th Cir. 2006) .................. 31

*United States v. Sokolow*, 490 U.S. 1 (1989) ........................................ 29

*United States v. Strickland*, 245 F.3d 368, 380 (4th Cir. 2001) ............. 33

*United States v. Walker*, 615 F.3d 728, 730, 733-34 (6th Cir. 2010) 13, 22

*United States v. Walton*, 207 F.3d 694, 696-697, 698 (4th Cir. 2000) .... 31

*United States v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998) ............... 31

## STATUTES

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 922(g) .......................................................................... 3

18 U.S.C. § 924(c) .......................................................................... 3

21 U.S.C. § 841(a) .......................................................................... 3

21 U.S.C. § 846 .............................................................................. 3

28 U.S.C. § 1291 ............................................................................ 1

## OTHER AUTHORITIES

U.S. Const. Amend. IV ...................................................... 9, 12, 23, 27

iii

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this federal criminal case under 18 U.S.C. § 3231. Frazer timely appealed, JA 32, 39, and this Court has jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

I. Whether the district court properly denied Darryl Frazer's ("Frazer's") motion to suppress handgun and drug evidence recovered from a bag he threw from a second story stairwell into an adjacent courtyard, where the court appropriately found as a factual matter that Frazer had refused to submit to a police stop.

II. Whether the district court correctly found that police officers had reasonable suspicion to attempt an investigative stop where Frazer's companion matched the description of an individual involved in a recent shooting in the vicinity; Frazer and his companion were carrying bags strapped across them that officers knew from experience were often used to conceal weapons; the two men were seen walking in a public roadway when a sidewalk was available, in

1

apparent violation of local law; and, after being approached by uniformed officers, the two men broke into headlong flight.

III.    Whether the district court properly exercised its discretion by following clear Fourth Circuit precedent to deny Frazer's request for a jury instruction defining reasonable doubt, to which the government objected and which the jury did not later request during deliberations.

## STATEMENT OF THE CASE

On the evening of July 25, 2019, Frazer was arrested in Montgomery County, Maryland, after fleeing from police officers who attempted to speak with him and his co-defendant Shamire Moore about a recent shooting incident.  JA 212-14. After leading officers on a foot chase that ended in an open-air apartment stairwell, Frazer tossed a bag containing a loaded handgun, approximately 100 grams of marijuana, a digital scale, and gloves into an adjacent courtyard. JA 219-20.  Seconds later, the supervising police officer recovered Frazer's bag and felt a gun inside, which he confirmed by opening it. JA 73.

A District of Maryland grand jury charged Frazer by indictment with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  JA 1. Frazer was ordered detained pending trial both on those charges and for violating his conditions of supervised release stemming from a prior federal conviction for being a felon in possession of a firearm.  JA 1.

On January 8, 2020 (later supplemented on September 1, 2020), Frazer moved to suppress evidence of the gun and drugs as the product of an illegal stop and search.  JA 2-3. On May 20, 2021, the district court held a hearing on Frazer's motions, which it subsequently denied.  JA 5.

On June 23, 2022, the grand jury returned a superseding indictment adding a charge of conspiracy to distribute several controlled substances, including marijuana, in violation of 21 U.S.C. § 846, against Frazer and his co-defendant, Moore.  JA 7.

 Prior to trial, Frazer requested an instruction defining reasonable doubt, which the government opposed. JA 28.  Trial began on October 31,

3

2022.  JA 9.  During the charging conference, the district court declined to include Frazer's requested instruction.  JA 277.  During deliberation, the jury did not request clarification on the meaning of "reasonable doubt."

After deliberation, the trial jury found Frazer guilty of conspiracy to distribute marijuana, possession with intent to distribute marijuana, and felon in possession of a firearm.  JA 30-31. The jury declined, however, to find that Frazer conspired to distribute the other charged controlled substances and acquitted him of possessing a firearm in furtherance of a drug trafficking crime.  *Id.*

On March 9, 2023, the district court imposed a total sentence of 72 months on the instant charges and a consecutive sentence of 12 months for Frazer's violation of his conditions of supervised release.  JA 34. Defendant timely noted this appeal on March 13, 2023.  JA 39.

## STATEMENT OF FACTS

## I.    POLICE STOP

In July 2019, Montgomery County Police Officer Christopher Brown was assigned to a Community Action Team ("CAT").  The CAT's

4

purpose was to suppress crime and provide rapid response to criminal activity. JA 203-04. On July 11, 2019, police were alerted to a shooting in the White Oak area of Silver Spring, Maryland, in which blood had been found at the scene but there were no identified suspects or victims. One participant in the shooting, however, was described as a black man with long dreadlocks. JA 204.

Brown and his CAT teammates assisted in the investigation. JA 204. The day after the shooting, Brown was patrolling the area in uniform and saw men later identified as Frazer and his co-defendant, Moore. Moore had dreadlocks and had a large bandage visible on his upper arm. JA 50, 98, 205. Significantly, both men wore black satchels strapped across their bodies, which Brown had frequently seen used to carry firearms because it was more comfortable than hiding a handgun in one's pants and easier to discard if pursued by police. JA 51-53, 205. Brown had to depart the area to respond to another call, and when he saw the two men again later that day, neither bore the satchels they carried earlier. JA 55, 206.

5

No suspects or leads had been developed by the time Brown next saw Frazer and Moore on the evening of July 25, 2019.  JA 56-57, 206. That evening Brown was in plain clothes, and he saw Frazer and Moore walking together along the neighborhood's main roadway and, at one point, walking down the center of a cross-street (July Drive, which led into apartment buildings) rather than on the adjacent sidewalk.  JA 62-69, 206.  Both men were again carrying satchels strapped across their chests. JA 69, 88, 206.  Brown wanted to approach them to question them about the shooting, so, believing that he had cause to stop them for the jaywalking he had witnessed, he called for uniformed members of his team to make the stop.  JA 70, 102-03, 207-08.  Brown knew, however, that he could not lawfully arrest the men for the traffic violation but could issue a citation at most.  JA 90-91.

Officer Andrew Jacobs and Corporal Jason Halko responded and arrived as Frazer and Moore were entering the Lockwood Apartments. Upon seeing the uniformed officers, Frazer and Moore headed toward the breezeway of one apartment building.  JA 71, 218.  Jacobs and Halko followed the men into the breezeway, but realized as they emerged into

the courtyard beyond it that Frazer and Moore must have broken into a run as they were no longer visible.  JA 218, JA 287 (Video) at 2:12.

With help from apartment residents, who pointed out the direction that Frazer and Moore had fled (JA 287 at 2:26), Jacobs ultimately saw Frazer and Moore on the second floor of another building's open stairwell banging on an apartment door.  JA 218-19; 287 at 3:30.  Jacobs ordered the men "stop" as he climbed the stairs, JA 287 at 3:32, but as Jacobs made it up to the landing where he had seen them, both were now climbing over the railing in an attempt to escape, *Id*. at 3:36.  Jacobs started back down the stairs as Moore dropped and ran off.  *Id*. at 3:38.  Frazer, however, reversed course and started climbing back up over the railing. *Id*. at 3:40.  Jacobs ordered Frazer to "get down here" and threatened to use his TASER if Frazer did not comply.  *Id*. at 3:41-3:45.  Ignoring Jacobs, Frazer climbed back over the railing and briefly started down the stairs.  *Id*. at 3:46-3:52.  Jacobs climbed back up the stairs, with his TASER drawn, ordering Frazer to come back down the stairs and drop his bag.  *Id*. at 3:52-3:56.  Frazer reversed himself, climbed back up the stairs towards the railing, and threw his bag to the center of the

7

courtyard, where it landed approximately 40 feet away, beyond the inter-section of the complex's concrete walkways. *Id*. at 3:58. Once he had thrown the bag, Frazer complied with Jacobs's command to get on the ground. *Id*. at 4:01.

Brown, who had started up the stairs to assist Jacobs, ran back into the courtyard to recover the bag. JA 72, JA 287 at 4:12-4:22. Upon pick-ing up the bag, Brown immediately felt a gun inside. JA 72-73. Brown quickly opened the bag to confirm, called "we've got a gun" over the radio and maintained possession of the bag while he went to look for items that Jacobs (incorrectly) believed had been thrown into the bushes lining the building. JA 74, 148, 287 at 4:33-4:46. Not seeing anything, Brown left to help other officers pursue Moore. JA 77. As Jacobs arrested and hand-cuffed Frazer, the latter asked, "What I do?" to which Jacobs responded, "You had a gun you just threw." JA 287 at 4:54. Frazer replied that it "wasn't mine." JA 223.

## II.  MOTION TO SUPPRESS EVIDENCE

After pandemic-related delays, the district court considered Fra-zer's motions to suppress evidence from the July 25, 2019, chase and

8

arrest. Frazer essentially made the same challenges that he renews on appeal—that the entire stop was tainted because officers lacked reasonable suspicion to stop him, and that the warrantless search of his bag violated his Fourth Amendment rights. Case No. DLB-19-545 (D. Md.), ECF Nos. 22 and 51.

Prior to the hearing, the Government filed a consolidated brief responding to Frazer and his co-defendant Moore's various motions. *Id.*, ECF No. 53. Regarding the warrantless search of Frazer's satchel, the government argued that it did not constitute a Fourth Amendment search because Frazer had abandoned it:

> The seizure and subsequent search of Mr. Frazer's satchel did not implicate the Fourth Amendment, as he demonstrably abandoned it and its contents rather than submit to law enforcement's lawful order to "drop" it. His significant toss of the satchel landed in close proximity to two onlookers (thankfully not causing the firearm to discharge, given that the chamber was loaded, the hammer was pulled back and the safety was off) and was shortly thereafter seized and searched by MCPD. *See California v. Hodari D[.]*, 499 U.S. 621, 628-29 (1991) (cocaine abandoned while Hodari was running from law enforcement was not the fruit of a seizure, since Hodari did not comply with show of authority and was not seized until he was tackled.) At the time he tossed the satchel, presumably to distance himself from it and deny knowledge of its existence, before he finally submitted to MCPD's authority, he abandoned any standing to contest its seizure.

*Id.* ECF No. 53 at 8. The government did not argue that Brown frisked or opened the bag for officer safety. *Id.*

Following a full day of witness testimony on the subject, and having viewed body-worn camera footage of the arrest, the district court made factual findings. Regarding the propriety of the officers' attempted stop of Frazer, the district court explained that the attempted stop was justified, even though the jaywalking citation was a pretext for investigating other criminal activity. JA 226-29. The district court found several factors supporting reasonable suspicion to support the officers' initial approach of Frazer and Moore:

> One, a description of the 7/11 shooting in a neighborhood with a suspect involved in the shooting was described as a black man with dreadlocks, that all suspects there had fled and someone had been wounded as evidenced by blood on the scene [].
>
> Two, the sighting on July 12, 2019, the day after the shooting by Officer Brown of Mr. Moore and Mr. Frazer in the same neighborhood, roughly, about a mile away from the shooting incident. Mr. Moore matched the description of a suspect in the shooting, a black male with long dreadlocks and he appeared to have a fresh bandage on his arm. There had been no reports of a shooting victim seeking medical treatment and no suspect had yet been apprehended.

10

In addition, both men were carrying small black satchels that are similar to, what I will refer to as throw-away bags, that Officer Brown and Officer Jacobs knew from their own experience, including from prior arrests that drug dealers use to carry weapons, contraband or both so they can be tossed away easily.

And in addition, Officer Brown conducted surveillance on the 12th, lost sight of the two defendants for a time until he saw them again. They did not have the satchels, but he said what he believed is they had ditched the satchels because there was a lot of law enforcement in the community.

Third, Officer Brown and his team were involved [in] investigating the shooting. They weren't primarily responsible. They were assisting. And Officer Brown saw Mr. Moore and Mr. Frazer again on the 25th, which is just two weeks later in the same general area again carrying satchels. He recognized them from his surveillance on the 12th. And they were seen in the apartment complex, stayed for ten minutes and then continued walking where Officer Brown observed them on the July Street where there was the – this is the next point – apparently violating a traffic violation, committing a pedestrian violation and decided that at that point, that gave him the opportunity to question both Brown – both Mr. Moore and Mr. Frazer about the 7/11 shooting, and that that was a reason to initiate that stop as well.

All of this is a led up to the fact that they never got the chance to initiate the stop, because as they approached Mr. Moore and Mr. Frazer, they fled, thereby adding evasive action, full flight running. And when ordered to stop, they continued to flee. So that's one more fact that is added to the total list of factors.

11

> My conclusion is there was a reasonable suspicion based on totality of circumstances, including the information known to the officers and reasonable inferences that would authorize an investigative stop, a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] stop of both the defendants.

JA 231-33. Further, regarding Frazer's bag, the district court stated:

> I find that at no time when Officer Jacobs was trying to bring Mr. Frazer under control did [Frazer] ever acquiesce or comply, or submit to the control. He did not drop the gun. He was ordered to, [but] he did not drop it. Instead, he threw it and that is why it is not at the ground where he already was as Jacobs was going up the stairs trying to get Mr. Frazer to lie down.
>
> And it was not until after he had thrown the gun . . . that Mr. Frazer submitted and got down [o]n the ground. The significance of that Fourth Amendment, we'll talk about in just a moment, but I find that notwithstanding the fact that he'd been ordered to drop the gun that the evidence persuades me by preponderance that at no time did Mr. Frazer ever comply, [he] resisted at all points. And it was not until he threw the gun off into the woods or to the bushes that separate the apartment complex . . . in an effort to get rid of it, that was not complying with the order.

JA 223-24.

Despite noting that the government, in its argument for the admissibility of the contents of Frazer's bag, had not relied on the case, the district court found that Frazer's situation was analogous to *United States v. Smith*, 994 F. Supp. 2d 758 (E.D. Va. 2013), *aff'd* 583 F. App'x

12

196 (4th Cir. 2014).  JA 233-34.  In *Smith*, a bus passenger approached by officers regarding the contents of his bag first gave consent for them to search it, but then broke into flight, illegally crossing a busy road in the process.  *Smith*, 994 F. Supp. 2d at 760.  After Smith was apprehended and handcuffed, officers searched the bag he had been carrying and discovered a weapon inside.  The district court there reasoned that, after Smith's flight, "reasonable suspicion authorized the officers to further investigate Smith's person and effects in order to protect their own safety and the safety of the public if Smith was to be released" even if his unlawful conduct in running through oncoming traffic during his flight would not have supported an arrest.  *Id*. at 767.  Thus, faced with the choice of returning an unsearched bag to a man they could not legally arrest, the district court found the search that yielded the weapon was reasonable for purposes of officer safety.  *Id*. at 768.

Mentioning other cases (such as *United States v. Walker*, 615 F.3d 728 (6th Cir. 2010)) and comparing *Smith* to the instant case, the district court found significant the lack of an arrestable offense up until the time Brown found Frazer's gun in the discarded satchel, "conclud[ing] that

despite the handcuffs, that Frazer was not placed under arrest until after they found the handgun, which gave them probable cause" to arrest.  JA 240.  The district court reasoned that, had Frazer simply explained that he ran because he was afraid, the officers would have had to let him go absent the gun's discovery.  JA 241.  The district court found nonsensical the counterfactual proposition that the officers would, at that point, have had to give Frazer "back that satchel, let him take the satchel and walk away when it may have a gun or other activity?  They can't open it up and look and make sure?  Of course not."  JA 241.  Accordingly, opening the satchel fully accorded with the needs of officer safety.

Ultimately, the district court was satisfied that the attempted stop and bag seizure were fully legal under a *Terry* analysis and declined to analyze further:  "I'm not going to go into standing issues.  You can take that up with the Fourth Circuit, but [] I don't have to deal with abandonment.  I find that it was a proper search under *Terry* and then once they found the gun, they had probable cause to arrest, although there may be an abandonment issue in there someplace."  JA 243-44.  Accordingly, the Court denied Frazer's suppression motions.  *See* JA 12.

14

## III.  TRIAL AND SENTENCING

### A.    Evidence

Trial began on October 31, 2022.  JA 9.  Following jury selection, Frazer's co-defendant Moore decided to plead guilty pursuant to a plea agreement with the government, which delayed opening statements until the afternoon of November 1.  *Id*.  Frazer's trial strategy was to concede that he possessed the firearm unlawfully—and he stipulated on the record to such—but to maintain that his possession was not in furtherance of drug trafficking.  JA 252-58.

The government's case in chief largely consisted of officer testimony relating to the events of July 25, 2019, covered during the motions hearing, but was augmented with evidence obtained from Frazer's cell phone. The cell phone evidence included various pictures of Frazer and Moore together carrying the same satchels with which they were arrested and displaying cash, along with text messages between Frazer and various parties showed Frazer setting up sales of marijuana and attempting to broker other deals for other drugs.  JA 263.  Messages also showed Frazer discussing obtaining firearms for himself and Moore.  JA 264.

15

**B.    Jury Instructions and Verdict**

Frazer declined to put on an affirmative case, relying instead on a reasonable doubt argument.  During the charging conference, the district court took up Frazer's request for a jury instruction that would have defined reasonable doubt using language taken from Maryland State pattern instructions.  JA 27-28, 275.

U.S. District Judge Paul Grimm, who would retire the following month and was presiding over his final trial, noted about the proposed instruction, "[I]f I were inclined to give an instruction on beyond a reasonable doubt [it] seems like a pretty reasonable definition of beyond a reasonable doubt."  JA 275-76.  He mused over the Fourth Circuit's guidance on the issue, noting:  "[T]he law of the Fourth Circuit is almost like this is so bad that if you try to even explain it, you will mess it up, so just don't explain it, which seems very unsatisfying to me.  But that's the law, and that's the law I have always adhered to in my entire time with this Court."  JA 276.  Judge Grimm indicated that he would grant the instruction if both sides agreed because "if there were an appeal, it would be invited error, and I think I would be okay with that," JA 276, but

16

otherwise he had "operate[d] under the maxim that I am only going to try one case one time, so I am not going to – I am not going to mess it up" by giving the instruction absent agreement. *Id.*

Government counsel expressed sympathy with the Court's dilemma but confirmed the U.S. Attorney's Office's position was to object to any definition of reasonable doubt. JA 277. Judge Grimm noted this might be a case where the Fourth Circuit decided, despite his holding, that the reasonable doubt instruction should have been given, but concluded: I am not going to do it. It's in the record. My heart is with you guys, but my head is with the law in the Fourth Circuit." *Id.*

As such, the district court declined to define reasonable doubt when it charged the jury on November 3, 2022. JA 279-82. The jury did not request further clarification of "reasonable doubt" as it deliberated.

Frazer was acquitted on the most serious charges of possessing a firearm in furtherance of a drug trafficking crime and of conspiring to distribute a detectable amount of cocaine. JA 30-31. He was convicted of conspiring to distribute a detectable amount of marijuana, of

17

possessing marijuana with the intent to distribute it, and of being a felon in possession of a firearm. *Id.*

After Judge Grimm's retirement, the case was reassigned to U.S. District Judge Deborah Boardman, who presided over Frazer's sentencing on March 9, 2023. JA 31. The district court sentenced Frazer to 72 months' imprisonment on the felon in possession conviction, and imposed sentences of six months on the marijuana convictions to be served concurrently with each other and with the felon in possession sentence. JA 34. The district court imposed a consecutive sentence of 12 months on Frazer's violation of his conditions of supervised release. JA 34.

## SUMMARY OF ARGUMENT

I. The Court should affirm the district court's denial of Frazer's motions to suppress the search of his bag, which contained a loaded firearm, marijuana, and a digital scale. As the district court properly held, the search was reasonable pursuant to an authorized *Terry* stop after Frazer fled from a law enforcement interview without ever submitting to the show of authority. In the alternative, the district court's finding that Frazer abandoned his bag during flight before complying with any officer

18

instructions also fully supports affirmance on the alternate ground of abandonment.

II.    The Court should reject Frazer's alternative argument that the district court should have deemed the evidence to be fruit of a poisonous tree irrevocably tainted by an unlawful attempted stop. The district court correctly found that the officers had objectively reasonable suspicion to support the investigative stop, even if they employed a legally permissible pretext.

III.    The Court should reject Frazer's claim of error in the district court's denial of his requested instruction for definition of "reasonable doubt," which was never requested by the jury. The district court followed this Court's binding jurisprudence in declining to give Frazer's requested instruction over the government's objection. This denial was not at all erroneous, much less an abuse of discretion. Moreover, even if it was an abuse of discretion to reject the instruction, Frazer was not prejudiced as the jury returned verdicts of acquittal on the most serious charges he was tried on, and he had stipulated to all elements of the offense that dictated his ultimate sentence.

# ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY DENIED FRAZER'S MOTION TO SUPPRESS THE GUN AND DRUG EVIDENCE OFFICERS FOUND IN HIS SATCHEL.

### A.   Standard of Review.

In reviewing the denial of a suppression motion, this Court reviews a district court's factual findings for clear error and its legal conclusions *de novo.  See United States v. Buster*, 26 F.4th 627, 630 (4th Cir. 2022).

Even if the Court finds the lower court's legal conclusions in error, it is "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *United States v. Flores-Granados*, 783 F.3d 487, 491 (4th Cir. 2015), *accord L.J. v. Wilbon*, 633 F.3d 297, 310 n.9 (4th Cir. 2011).

### B.   The District Court Correctly Found That Police Acted Properly in Searching Frazer's Bag Before Returning It.

The district court correctly decided that the gun and drug evidence recovered in Frazer's bag was admissible as the product of a lawful *Terry* stop and reasonable actions by the officers in the process of that stop.

Accordingly, this Court should affirm the district court's ruling on its articulated grounds.

Defendant's present challenge to the admissibility of the weapon and drug evidence recovered from Frazer's bag depends entirely on analogizing from this Court's subsequent decision in *United States v. Buster*, 26 F.4th 627 (4th Cir. 2022), which presented facially similar facts but which, ultimately, is inapplicable here. Br. at 10. While both cases involve officers recovering a gun from a bag carried by the defendant following a foot chase, *Buster* presented a significant difference in that the defendant there never abandoned the bag. Indeed, in *Buster*, the defendant was still wearing the bag holding the handgun after he had been detained and handcuffed, the bag's strap was cut to allow it to be removed from his body, and only thereafter was it searched. 26 F.4th at 630. There, this Court found no exigency, such as officer safety concerns, existed to support the warrantless search of the bag after the defendant had been handcuffed, and by its own language, *Buster*'s holding was narrow: "We emphasize the limits of our holding. . . . We hold only—but importantly—that a doctrine authorizing a limited warrantless search *to*

*protect officer safety* cannot be stretched to cover situations where there is no realistic danger to officer safety.  Accordingly, we reverse the district court's denial of Buster's motion to suppress the firearm." *Id.* at 635 (emphasis added).

The *Buster* Court specifically distinguished situations such as those upon which Judge Grimm relied, including those raised in *United States v. Walker*, 615 F.3d 728, 730, 733-34 (6th Cir. 2010), in which the Sixth Circuit had "approv[ed a] limited *Terry* search of [a] bag where [an] armed robbery suspect was not restrained and officers 'by no means had the scene under control or their safety secure.'" *Buster*, 26 F.4th at 635. In the instant case, Moore had continued his flight and the situation was fully in flux at the time the bag was recovered—and the recovery itself revealed the firearm inside.  Similarly, as the *Buster* Court noted:  "This case does not present (and the parties have not raised) any question about whether or when officers may search a bag before returning it once a *Terry* stop concludes," again citing *Walker* and its described situation "where the 'only alternative' to a protective frisk was 'to give a suspect access to a potential weapon' located 'in an un-searched bag.'" *Buster*, 26

22

F.4th at 635. Those scenarios were precisely what properly concerned Judge Grimm in this case, and they render *Buster* inapplicable here.

Here, moreover, the district court was not presented with an argument of exigency based on officer safety, but rather that Frazer had voluntarily thrown the bag, abandoning it, and thus waiving his Fourth Amendment protections against unwarranted search. Although the district court decided to analyze Frazer's case as a *Terry* stop rather than under the case law concerning abandonment, its rationale for the legality of discovery of the gun and drug evidence survives *Buster*.

Indeed, *Buster* does not stand for the proposition that a protective patdown or search for a weapon can never be reasonable when the container is separated from its suspect owner. Rather, *Buster* merely forbids justifying such searches by means of a talisman-like invocation of officer safety concerns when the situation's facts cannot reasonably support it. And the *Buster* opinion specifically disclaimed that it precluded a district court's finding reasonable a bag search where "the only alternative to a protective search [would be] to give a suspect access to a potential weapon located in an un-searched bag." *Buster*, 26 F.4th at 635 (quotation marks

23

omitted). That latter scenario is exactly what the district court here envisioned when it found reasonable Detective Brown's opening of the bag, particularly after Brown had felt the telltale shape and heft of a weapon inside, given that Brown already suspected Frazer's bag contained a gun (JA 243) and that Frazer intentionally threw the bag to distance it from himself while evading police (JA 241).

The instant case if further distinguishable from *Buster* in that, there, the "district court identified only one basis for denying [his] motion to suppress the firearm found during the search of his bag, *and the government has never offered any other*." *Buster*, 26 F.4th at 634 (emphasis added). Specifically, the district court in *Buster* concluded that the frisk of the bag was justified for the purpose of determining whether Buster had a weapon, *i.e.*, to determine whether he was presently dangerous. *Id*. But, critically, *Buster*'s district court had made no factual findings that officers actually searched the bag out of a concern for their safety, and this Court reversed.

In the case below, a *Terry* patdown for fear that the defendant was presently armed was neither the rationale advanced by the government,

nor ultimately the reason given by the district court. Instead, the government's sole argument in its brief was that recovery of the bag and its contents was proper because Frazer had purposely thrown it away to separate it from himself, so it was legally abandoned. The district court did not reject the government's abandonment argument, it just found no need to decide it after determining the evidence admissible as discovered in the due course of a lawful *Terry* stop ("I don't have to deal with abandonment . . . ."). JA 243-44.

Accordingly, this Court should find that the district court's factual finding that Officer Brown's actions in recovering the thrown bag and searching it were reasonable under a *Terry* stop analysis and supported denial of Frazer's suppression motion, notwithstanding the case's superficial similarity with *Buster*.

### C. Alternatively, The District Court's Factual Finding That Frazer Threw His Bag Without Submitting To Police Authority Independently Supports Affirmance.

Though the district court determined it need not reach the government's offered ground for rejecting Frazer's challenge to admissibility of

25

the bag's contents at trial, this Court should affirm on the alternative grounds and factual findings supporting abandonment, as well.

As the government argued in its written submissions below, Frazer's challenge to the admissibility of the bag he intentionally threw to distance himself prior to his submission to officer directions is foreclosed by *California v. Hodari D.*, 499 U.S. 621 (1991). In *Hodari D.*, as here, several young men, including Hodari, ran when approached by uniformed police officers, who chased them on foot. *Id.* at 622-23. When Hodari was about to be overtaken, he tossed a crack cocaine rock, which was recovered by police. *Id.* at 623. A California appellate court had suppressed the drug evidence on the theory that Hodari had been seized by police when chase began without reasonable suspicion. *Id.* The Supreme Court disagreed.

The Supreme Court found that Hodari had not been seized by police because he did not comply with their direction to halt before he discarded the crack cocaine. Further, citing *Hester v. United States*, 265 U.S. 57, 58 (1924), the Court held that contraband discarded during flight from law enforcement is not seized "in the sense of the law when the officers

26

examined the contents [] after they had been abandoned." *Hodari D.*, 499 U.S. at 629.

The district court here found as a factual matter that Frazer had not yet complied with police instructions at the time he intentionally threw the bag to distance it from himself. JA 223-24. This factual conclusion was amply supported by testimony that the court credited, as well as body camera recordings that covered the entire chase and recovery. Accordingly, the Court should affirm the district court's denial of Frazer's motion on the ground originally advanced by the government, namely, that Frazer abandoned the bag during flight and, consequently, its search by Officer Brown did not implicate Frazer's Fourth Amendment rights.

## II. THE DISTRICT COURT ALSO CORRECTLY FOUND THAT THE OFFICERS HAD REASONABLE SUSPICION TO INITIATE THEIR STOP OF FRAZER.

### A. Standard of Review.

As noted above, in reviewing the denial of a suppression motion, this Court reviews a district court's factual findings for clear error and its legal conclusions *de novo*. *Buster*, 26 F.4th at 630.

### B.   The Police Stop in This Case Was Not Improper.

The district court correctly found that Officer Brown's decision to stop Frazer and Moore was lawful.  The facts the Court found supporting this conclusion – namely, that Brown had good reason to believe Moore had information about the July 11 shooting because of his physical description and bandage (JA 212); that Moore and Frazer were likely to be carrying weapons in the strapped bags they wore and had appeared to have discarded earlier after seeing him surveil them in his marked cruiser two weeks earlier (JA 212); and that Brown believed he had sufficient basis to stop them in order to issue them a citation for jaywalking (JA 212-13) – are all fully supported by the record and none is clearly erroneous.  The district court properly applied those facts to this Circuit's law on when an officer may conduct an investigative stop and found those facts provided objective reasonable suspicion.  Additionally, though unnecessary, the district court found that Brown and his fellow officers had a good faith belief that the jaywalking violation provided proper cause to stop them men.  JA 226.

But the district court further found that Frazer and Moore created additional reasonable suspicion before the stop was effectuated based on

28

their decision to flee: "And we also have evasive behavior. Evasive behavior is a pertinent fact in determining reasonable suspicion. And headlong flight, rather than just simply trying to be evasive, seems to me a pretty ultimate act of evasion." JA 229. The district court acknowledged that "the mere fact that someone fled from officers, taken alone, would not be sufficient to raise the issue to reasonably articulable suspicion." JA 230. The district court then comprehensively recited factors (laid out above in the statement of facts) that supported officers' reasonable suspicion to commence the stop and then, once flight began, to continue to follow and ultimately stop Frazer. JA 231-33.

Notwithstanding Frazer's attempt to frame the issue in terms of racial bias, Br. at 10-19, the district court understood and articulated the controlling legal standards and applied them to its factual findings, including *Terry* for the reasonable suspicion standard to initiate a stop; *United States v. Sokolow*, 490 U.S. 1 (1989) and *United States v. Arvizu*, 534 U.S. 266 (2002) for employing a totality of the circumstances analysis to determine whether reasonable suspicion exists; and other Fourth Circuit cases interpreting those precedents. JA 230-31.

29

This Court should affirm the district court's finding that objective reasonable suspicion existed to support the officers' initial attempt to stop Frazer and Moore, and that the men's subsequent actions, including flight and Frazer's attempt to dispose of his bag, provided additional suspicion to support the officers' continued attempts to stop them.

## III. THE DISTRICT COURT ACTED WITHIN THE SCOPE OF ITS PROPER DISCRETION IN DENYING FRAZER'S REQUEST TO DEFINE "REASONABLE DOUBT" FOR THE JURY.

### A.    Standard of Review.

"An appellate court reviews a district court's decision to refuse a proposed jury instruction for abuse of discretion.  However, the appellate court conducts a *de novo* review of any claim that jury instructions incorrectly state the law."  *United States v. Purpera*, 844 F. App'x 614, 617 (4th Cir. 2021) (*citing United States v. McLaurin*, 764 F.3d 372, 378-79 (4th Cir. 2014)).

### B.    The District Court Properly Exercised Its Discretion in Denying the Requested Instruction.

This Court's stance has long been that "attempting to explain the words 'beyond a reasonable doubt' is more dangerous than leaving a jury

to wrestle with only the words themselves.'" *United States v. Lighty*, 616 F.3d 321, 380 (4th Cir. 2010) (quoting *United States v. Walton*, 207 F.3d 694, 698 (4th Cir. 2000) (*en banc*)). Additionally, the Court has highly discouraged district courts from giving a reasonable doubt instruction unless specifically requested by the jury. *See United States v. Smith*, 441 F.3d 254, 270 (4th Cir. 2006) ("'It is well settled in this circuit that a district court should not attempt to define the term "reasonable doubt" in a jury instruction absent a specific request for such a definition from the jury.' A district court may also restrict counsel from defining the phrase.") (citations omitted); *see also id.* (recounting the district court's acknowledgment that "'The Court is not permitted to attempt to define the word reasonable doubt . . . [a]nd that is because the courts have found that the definition is a self-evident definition and there is no better way of explaining the concept.'"). Thus, it is well-established in the Fourth Circuit that "although the district court may define reasonable doubt to a jury . . . the district court is not required to do so." *Lighty*, 616 F.3d at 380 (quoting *Walton*, 207 F.3d at 696-97); *see also United States v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998) ("The trial court is not required

31

to define reasonable doubt as a matter of course so long as the jury is instructed that a defendant's guilt must be proven beyond a reasonable doubt."). Indeed, "even if the jury requests a reasonable-doubt instruction," which the jury did *not* in this case, "'the final decision of whether to acquiesce to a jury's request and define reasonable doubt' is left to the district court's discretion." *Lighty*, 616 F.3d at 380.

In this instance, the district court correctly distilled the law of the Fourth Circuit on this issue: that it was safest not to give an instruction over one party's objection, particularly in the absence of a prior request by the jury. Considering the risk versus the reward proposition before it, the district court reasoned that since it was under no requirement to further define reasonable doubt, while, on the other hand, it could be reversed if it gave any incorrect definition of reasonable doubt, it was the safer course of action to deny Frazer's request, even if it considered the requested definition to be substantively correct. This rational decision was completely consistent with Circuit caselaw and cannot constitute an abuse of discretion.

32

## C.    Even If the District Court Abused Its Discretion, The Error Was Harmless Because Frazer Was Not Prejudiced.

Even were this Court to consider the district court's denial of Frazer's reasonable doubt instruction an abuse of its proper discretion, this Court should not reverse Frazer's conviction because he can have suffered no prejudice from the absence of the instruction here. *See United States v. Strickland*, 245 F.3d 368, 380 (4th Cir. 2001) ("Where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."). Here, as Frazer's sentence was driven only by a count to which he fully admitted and where he was acquitted on the more serious offenses, this Court cannot find any prejudice and should affirm even on a harmless error standard.

Frazer was ultimately convicted by the jury only of being a felon in possession of a firearm—to which he had stipulated to every element at the beginning of trial (JA 257)—and of possessing with intent to distribute, and conspiring to distribute, a detectable amount marijuana, Class

33

D felonies punishable by up to five years on each count. JA 30-31. The jury acquitted him on all more serious charges: possession of the firearm in furtherance of a drug trafficking crime, a Class A felony punishable by up to life imprisonment, and conspiracy to distribute detectable amounts such other drugs as cocaine, which constituted a Class C felony punishable by up to twenty years' imprisonment. *Id.* The jury not only requested no further instruction on reasonable doubt, but they also evidently had no problem finding it even without Frazer's requested definition.

Additionally, even had the jury acquitted him on the two marijuana trafficking charges and only convicted him on the count which he admitted throughout trial, it would not have affected Frazer's sentence at all. The district court imposed sentences of just six months on each of the two drug convictions, to be served concurrently with the sentence on the felon in possession count. JA 34. Frazer's sentencing guidelines calculation on the felon in possession conviction would have included a four-level enhancement for possessing the firearm in conjunction with another felony offense (drug trafficking) regardless of his conviction or acquittal on the drug counts. And the district court ultimately imposed a significant

34

downward variant sentence of just six years' imprisonment on that count of conviction, well below the statutory maximum of 10 years and effectively disregarding that conduct.  JA 34.

\*　　\*　　\*

In sum, this Court should reject Frazer's challenge to the district court's denial of his requested instruction because it acted within the scope of its proper discretion in denying it; and, further, any error was harmless as Frazer was not prejudiced in any way by the omission of the instruction.

## CONCLUSION

For the reasons stated above, the Court should affirm Frazer's convictions and sentence.

Respectfully submitted,

Erek L. Barron
United States Attorney


Adam K. Ake
Assistant United States Attorney

September 13, 2023

35

**STATEMENT WITH RESPECT TO ORAL ARGUMENT**

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

# CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using:

**Microsoft Word, Century Schoolbook, 14-point font**.

2.     Exclusive of the table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains 7,001 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

Adam K. Ake
Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2023, I electronically

filed the foregoing with the Clerk of Court using the CM/ECF System,

which will send notice of such filing to the following registered CM/ECF

user:

Steven M. Klepper
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, MD 21202
(410) 752-6030
sklepper@kg-law.com

 

Adam K. Ake
Assistant U.S. Attorney